UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PIONTEK YOUNG, )
)
       Movant, )
)
   vs. ) No. 4:04-CV-836 (CEJ)
)
UNITED STATES OF AMERICA, )
)
       Respondent. )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Piontek Young to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The United States has filed a response, and the issues are fully briefed.

Following a jury trial, Young was found guilty of kidnaping in which death resulted (Count I), in violation of 18 U.S.C. § 1201(a)(1), and being a felon in possession of a firearm (Count II), in violation of 18 U.S.C. § 922(g)(1).[1] It was alleged that Young kidnaped Billy Joe Williams at gunpoint in Illinois and then drove him to St. Louis where the victim was shot to death. Young was sentenced on September 5, 2002, to a term of imprisonment of life without possibility of release on Count I and a consecutive term of 120 months' imprisonment on Count II. On April 21, 2003, the judgment was affirmed on appeal. The Court of Appeals denied Young's motion for rehearing en banc on July 1, 2003. Young timely filed the instant § 2255 motion on July 2, 2004.

---

[1] The evidence pertinent to the charges is discussed below as it relates to Young's claims.

## I. Ineffective Assistance of Counsel

Young asserts in his motion that he was denied effective assistance of counsel. He alleges a number of instances in which his attorney's performance was deficient.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to show prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The failure to show prejudice is dispositive and courts need not address the reasonableness of counsel's performance in the absence of prejudice. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

### A. Speedy Trial Act

The federal criminal proceedings against Young began on April 18, 2000, with the filing of a complaint charging him with kidnaping and the filing of a motion for pretrial detention. Young was arrested on April 21, 2000, pursuant to a warrant issued upon the complaint, and he made an initial appearance on that same date in the district court for the Southern District of Illinois. On April 25, 2000, following Young's transfer to the Eastern District of Missouri, a magistrate judge conducted a combined preliminary

examination and detention hearing. The magistrate judge entered an order of detention on April 27, 2000. On May 24, 2000, the government dismissed the complaint without prejudice. More than a year later, on January 2, 2002, an indictment was filed, charging Young with kidnaping and felon in possession of a firearm.

Prior to the filing of the indictment, the State of Missouri initiated criminal charges, including a charge of Murder First Degree, against Piontek Young. According to the declaration of Dwight Warren, the St. Louis assistant circuit attorney assigned to the case, there was sufficient evidence to substantiate the charges, and it was his intent to take the case to trial. However, after the government obtained the indictment, the assistant circuit attorney dropped the state charges in the interest of conserving state resources.

Young asserts in his motion that his attorney's failure to challenge the dismissal of the federal complaint without prejudice and to move for dismissal of the indictment based on violation of the Speedy Trial Act constituted ineffective assistance.

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, establishes time limits for the prosecution of a criminal case. Specifically,§ 3161(b) provides that "any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Section 3161(c)(1) provides that the trial of a defendant must commence within seventy days of the date of filing of the indictment or the

date of the defendant's first appearance before the court, whichever is later. The Speedy Trial Act also provides that, in computing the time within which the indictment must be filed or the trial must commence, certain periods of delay are to be excluded. Thus, the Act specifically excludes "delay result from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161 (h)(1)(H). Also excluded are delays that result from removal proceedings under Fed. R. Crim. P. 40, the transportation of a defendant from another district, and delays reasonably attributable to any period of not more than thirty days during which any proceeding concerning the defendant is under advisement by the court. 18 U.S.C. § 3161(h)(1)(G), (H) and (J).

As set forth above, Young's first appearance was on April 21, 2000, in the Southern District of Illinois where an initial appearance and removal proceedings were conducted. Under the Speedy Trial Act, the elapse of time between his initial appearance and his removal to the Eastern District of Missouri is excluded from computing the time within which an indictment had to be filed. Also excluded from the computation is the delay resulting from the magistrate judge's consideration of the government's motion for pretrial detention. The Court concludes that, given these exclusions, no Speedy Trial Act violation had occurred by May 24, 2000, when the complaint was dismissed. Thus, Young's attorney did not render ineffective assistance by failing to seek dismissal of the complaint on speedy trial grounds.

Young argues, however, that his attorney should have challenged the government's motion to dismiss the complaint without prejudice, because the motion was brought in bad faith and because it resulted from collusion between the federal and state prosecutors to violate Young's right to a speedy trial. Rule 48(a) of the Federal Rules of Criminal Procedure provides that the government may dismiss a complaint with leave of court. Here, the government sought and was granted leave of court to dismiss the complaint against Young. Apart from Young's unsubstantiated allegations, there is nothing to support a finding of bad faith or collusion. Additionally, as discussed above, the declaration of the assistant circuit attorney confirms that the state prosecution was initiated because the evidence indicated that Young had committed state crimes, including Murder First Degree. Indeed, the victim's body was found in St. Louis after police received a report of gunshots. St. Louis police officers were involved in the initial stages of the investigation, conducting searches of the residence Young shared with another individual and interviewing Young after he was taken into custody by Illinois state authorities. These facts show that St. Louis authorities had an interest in the investigation and prosecution of Young even before he was arrested on the federal complaint. Because of the absence of bad faith or collusion, a motion to dismiss the complaint or the indictment based on these grounds would have failed. Defense counsel cannot be deemed to have provided ineffective assistance because he did not file a motion lacking merit.

### B. Investigation

At trial, government witness Quentin Holmes testified that he had seen two people in the alley where the victim was found. Holmes testified that the two people were firing guns and that they left the scene in a silver minivan. The government also presented evidence from Marrell Davis, who testified that Young was driving her silver minivan on the day that the victim was kidnaped and killed. Young alleges that counsel did not investigate a recording of a dispatch communication in which police officers were advised to look for a grey Subaru station wagon suspected to have been involved in the shooting. According to Young, the dispatch recording would have revealed that the description of the vehicle came "from a lady down the street."

A recording of a 911 call was provided to defense counsel before trial. The recording reveals that the caller, who sounded female, told the police that she'd heard gunshots, but she hadn't seen anything. The recording of the dispatch communication, which was also provided to defense counsel, reveals that police were told that "a citizen up the street" had provided a description of a Subaru station wagon that may have been involved in the shooting. The "citizen" referred to in the recording was later determined by police to be Quentin Holmes.

Defense counsel states in his declaration that he knew of Quentin Holmes and spoke to him before trial. Additionally,

-6-

defense counsel cross-examined Holmes extensively at trial. Holmes testified that when initially interviewed by the police he compared the silver minivan that he saw to a Subaru station wagon because they had similar hatchbacks. Holmes denied that he told or suggested to the police that the vehicle he saw in the alley was a Subaru.

The evidence belies Young's claim that his attorney did not investigate the 911 call and the dispatch communication. As the 911 recording reveals, the female 911 caller stated that she did not see anything. Thus, she could not have given a description of any individual or vehicle involved in the shooting. The sole eyewitness to the events in the alley was Holmes, whom defense counsel interviewed and cross-examined. Young has not shown that the outcome of the trial would have been different, but for defense counsel's actions.

Young's second allegation is that defense counsel failed to interview two witnesses, Melvin Willis and Kristin Young, who could have provided exculpatory evidence. In his declaration, defense counsel states that he interviewed Willis and Kristin Young before trial, and neither of them could provide an alibi for Young. In a supplemental motion, Young appears to describe his alibi as follows:

> **If given the opportunity, petitioner would have testified that [he] was at [home] with his son's mother. He had arrived there around 7:00 p.m. Around 8:30 p.m., my friend Jermain arrived and shortly after that, we left to go pick my friend Marell up. My friend (Jermaine) left his car at my house and rode with me till later when I**

> **dropped him back at his car. I then went into the house for the night. (4-12-00)**

Young does not show that either Willis or Kristin Young would have corroborated this account of his whereabouts. Perhaps more significant is that Young does not state that he gave this information to defense counsel. Finally, it must be noted that Willis was initially charged with Young in the kidnaping and murder of Billy Joe Williams. Given those circumstances, there is no indication that Willis would have been willing to testify in Young's defense.

Again, Young has not shown that his attorney's performance in investigating potential witnesses fell below an objective standard of reasonableness.

### C. Right to Testify

Young alleges, somewhat confusingly, that (1) his attorney refused to allow him to testify at trial and (2) his election not to testify was involuntary because it was prompted by defense counsel's failure to call witnesses and mount a defense.

Either contention is belied by the record which shows clearly that Young was advised by the Court of his right to testify and his right to call witnesses. Young stated under oath that he understood these rights, that it was his decision not to testify, and that he had come to that decision voluntarily. Thus, there is no factual basis for Young's present allegations.

### D. Motion to Dismiss Indictment

-8-

Young claims that he was denied effective assistance by reason of his attorney's failure to file a motion to dismiss the indictment. Young alleges that counsel should have investigated "the possibility . . . that perjury was presented to the grand jury by LaDonna Anderson to indict petitioner." LaDonna Anderson was a principal government witness who testified that she saw Young and another man take Billy Joe Williams at gunpoint from her residence.

In a supplemental motion, Young points to differences between Anderson's grand jury and trial testimony. He also points to differences between Anderson's testimony and that of other witnesses. Apart from the fact that the differences are not material, the existence of discrepancies in the testimony of a witness or between the testimony of two witnesses does not support a conclusion that one or both committed perjury nor is it a basis for dismissing an indictment that is valid on its face. See United States v. Levine, 700 F.2d 1176, 1180 (8th Cir. 1983).

### E. Motion for Mistrial

Young's next claim is that his attorney failed to seek a mistrial based on the government's knowing presentation of perjured testimony. A fair reading of the motion and supplemental motion suggests that Young is referring again to the testimony of LaDonne Anderson.

Defense counsel was provided a copy of Anderson's grand jury testimony and he cross-examined her at trial. So, any material discrepancies between the two would have been apparent. However,

-9-

none existed. Thus, Anderson's testimony would not have served as a basis for a motion for a mistrial. The fact that defense counsel did not pursue a motion that lacked merit does not constitute ineffective assistance.

Further, the jury had the opportunity to evaluate Anderson's credibility and to weigh her testimony. Young raised the issue of sufficiency of the evidence in his direct appeal. He is precluded from seeking review of that issue in a proceeding under § 2255. See Dall v. United States, 957 F. 2d 571, 572 (8th Cir. 1992); United States v. Smith, 843 F.2d 1148, 1149 (8th Cir. 1988).

### F. Indictment

As his sixth claim, Young asserts that he was denied effective assistance because his attorney did not object to the indictment's failure to set forth separate aggregating penalties in separate subsections. Count I of the indictment alleged that Young kidnaped Billy Joe Williams "for ransom, reward , or otherwise," and in so doing transported Williams in interstate commerce against his will and, as a result of the kidnaping, the Williams' death occurred, in violation of 18 U.S.C. § 1201(a)(1) and § 2. The penalties for violation of § 1201(a)(1) included imprisonment for a term of years or for life, and for punishment by death or life imprisonment if the death of any person results. Although it was alleged that Billy Joe Williams' death resulted from the kidnaping, the government did not seek the death penalty.

The jury was instructed on the elements of the offense of kidnaping and the elements of the offense of kidnaping in which a death occurred. Additionally, the verdict form allowed the jury to reach a verdict on either offense. The jury specifically found Young guilty of kidnaping in which a death occurred.

Because the death penalty was not at issue, there was no requirement that the indictment set forth any statutory or non-statutory aggravating factors. The jury was not asked to determine whether any such factors existed, as they were not relevant to the case. Moreover, the question of whether a death occurred as a result of the kidnaping was submitted to the jury for its determination. Thus, there is no basis for Young's arguments based on Apprendi v. New Jersey, 530 U.S. 466 (2000).

### G. Appeal

Young's final claim is that defense counsel failed to investigate and present "the strongest" issues on appeal. He also alleges that defense counsel's "blunders" impaired the effectiveness of counsel on appeal. In his direct appeal, Young challenged the sufficiency of the evidence to support the jury's verdict and the admissibility of certain evidence. He does not identify other issues that his attorney should have raised on appeal. Moreover, he does not show that he was prejudiced by counsel's omission of issues on appeal. As for defense counsel's alleged "blunders," the Court has addressed Young's specific allegations of ineffective assistance above.

## II. Conclusion

For the foregoing reasons, the Court concludes that Young is not entitled to the relief he seeks. The Court finds that Young has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Piontek Young to vacate, set aside, or correct sentence [Doc. #1] is **denied**.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT COURT

Dated this 19th day of February, 2008.